## HENRY RUDWIG v. JACOB CRUM.

**Judicial Sale of Real Estate—Mistake in Description—Power of Court to Correct—Judgment.**

> Where the court has ordered the sale of various tracts of real estate, designated by numbers, some of which were improved and valuable and others unimproved and less valuable, and by mistake in the sale and purchase thereof one buys what is supposed by the parties to be the valuable parcels for a high price and another buys at a low price what is supposed to be the unimproved parcel of land, while in truth by mistake the descriptions were erroneous, and the purchasers did not receive what they bought, such error is one of fact and may be corrected upon the supplemental petition of a purchaser filed in said cause.

**Power of the Chancellor.**

> The chancellor on a proper issue made for the purpose upon facts
> established, may correct a decree of a former term wrongfully entered
> through mistake or fraud.

### APPEAL FROM LOUISVILLE CHANCERY COURT

#### October 31, 1874.

OPINION BY JUDGE PETERS:

Two appeals are presented to this court from the Louisville
chancery court, on two transcripts of records, and are both docketed.
*Rudwig v. Crum,* No. 1. *Rudwig v. Crum,* No. 2.

No. 1 is a suit brought by Henry Crum against Fergerson,
Dawson and Rudwig, and in his petition the plaintiff alleges that
the defendants, Fergerson and Dawson, sold and conveyed to Rud-
wig a tract of land in Jefferson county for $18,500, all of which was
paid down except $1,150, for which Rudwig executed his two prom-
issory notes for $575 each, one payable in one and the other in two
years thereafter, with interest from date; that in the conveyance the
grantors reserved a lien on the land to secure the payment of said
notes, which notes they had assigned to him; that one of them was
past due; and he prayed for a foreclosure of the lien to which he was
entitled by reason of the assignment, and for a sale of land to pay his
debt. One Bryant was subsequently made a defendant, and he
filed an anwer which he made a cross-petition, and alleges that he
sold and conveyed the same land to Fergerson and Dawson; that
they then owed him $5,000 of the purchase money, evidenced by their
note, and to secure which he had in the deed made to them retained
a lien; that his note was past due; and he prayed for a foreclosure
of his lien and for a sale of land enough to pay his debt.

Rudwig answered the original and the cross-petition, not contro-
verting Bryant's lien; but he charges that he had not purchased
from Fergerson and Dawson all the land they purchased from Bry-
ant; that they yet had 171½ acres of the land they bought of Bry-
ant. He asked that the 171½ acres should be first sold, and that
only so much of his should be sold as would pay the residue of the
debt to Bryant, if any part should remain unsatisfied; and he made
his answer a cross-petition against his vendors for that purpose.

In his answer to Crum's petition, after admitting the lien retained
in the deed to him for the security of the debt he owed, and the
assignment of the notes to Crum, he avers that Fergerson and
Dawson promised and understood when he purchased of them, that

13

they would remove Bryant's lien, and claims that he will be entitled to a credit on his debt for so much of his land as may be sold to pay Bryant's debt, and by appropriate pleadings for the relief.

Bryant conveyed the land to Fergerson and Dawson by distinct parcels, describing such lots by metes, bounds and numbers from 1 to 6, inclusive, all bounds embraced in one deed, reciting that lot No. 1 contains 100 acres, No. 2, seventeen and one-half acres, No. 3, 50 acres, No. 4, 240 acres, No. 5, 50 acres, and No. 6 one acre.

The case was first heard on the cross-petition of Bryant; the court adjudged to Bryant his debt, and that he had a lien, and after directing the terms and place of sale, the court directs the marshal to sell the property, by lots as they are now divided, beginning with lots on tracts No. 1, then No. 2, then No. 3, then No. 6, then No. 5, then No. 4, unless the first lots sold bring enough to pay off and to satisfy said debt, interest and cost, and the case was remanded as to the petition and cross-petition of Rudwig.

On the 28th of June, 1872, the marshal made his report of the sale to the court, in which he reported Henry Rudwig the purchaser of lot No. 1, at $5 per acre, lot No. 3, at $4 per acre, and lot No. 6, at $5 per acre, and Jacob Crum the purchaser of lot No. 4, at $17.50 per acre, and lot No. 5, at $15 per acre; that Rudwig has complied with the terms of the sale by executing three notes for $438.50 each, with Isenburg as his security; and that Jacob Crum has executed three bonds for $147.50, each with George Crum as his security. Crum's notes are less than his purchase, but are for enough, when added to Rudwig's, to satisfy the decree under which the land was sold. By direction of the parties and their written consent herewith filed, he took the bonds on that day.

The written consent of all the parties is also filed in the case for a confirmation of the marshal's report of sale, without lying a week for exception. And on the 5th day of July, 1872, said report of sale was approved and confirmed by the court, and the commissioner was directed to make a deed to the purchaser.

The sale was made on the 27th of May, 1872. On the 7th of March, 1873, Jacob Crum appeared in court and declined to accept the deed to him prepared by the commissioner, and the court directed the commissioner to withhold the deed till the further order of the court. And on the 14th of the same month, Henry Rudwig moved the court to set aside the last named order.

In July, 1873, the court below directed the commissioner to make deeds to Jacob Crum and Henry Rudwig, as ordered by decree in

case No. 26,193 in the same court. In a few days thereafter Rudwig moved the court to set aside the last named order until after the trial of the case in this court of Jacob Crum and Henry Rudwig on appeal. That may be an error in the style of case, but the court overruled his motion in October, 1873. This order appears to have been made on the motion of plaintiff by attorney, ordering that a writ of possession be awarded him for lots 1, 2, 3 and 6, to which Rudwig excepted.

Upon a rule against Rudwig and his security to show cause why they should not pay the money into court due on their bonds, Rudwig responded at great length, but his response being adjudged, and the rule made absolute, he excepted and appealed to this court; and now he complains that the court below erred, first, in ordering the commissioner to make a deed to Jacob Crum and to Henry Rudwig as in case No. 26,193; second, in awarding to the plaintiff in this suit a writ of possession for lots 1, 2, 3 and 6; and third, in adjudging his response to the rule against him and his security insufficient, and making the rule absolute.

These questions being presented in appeal No. 1, and being involved inseparably in the decision of the question arising on the appeal between the same parties, we will proceed now to consider No. 2 in connection with the first, as the cases were heard together.

On the 7th of March, 1873, Jacob Crum filed a petition in the Louisville chancery court against appellant, in which, after referring to the suit of *George W. Crum v. Fergerson and Dawson,* and Bryant's judgment on the cross-petition in the case, and the sale under that judgment, he alleges that Fergerson and Dawson conveyed to Rudwig the several tracts of land marked in red lines on the plat filed with his petition on No. 1, 2, 5, and 6, supposed to contain 294 acres, 3 roods and 25 poles; that Bryant, their vendor, in addition to those parcels, conveyed to them two other parcels of land designated on said plat as No. 3 and 4; that Bryant's lien was exclusive as to the last named lots; that the court below ordered the sale of those two lots first, and if they did not sell for enough to satisfy his debt, then so much of the other lots should be sold as would be required to pay the residue of Bryant's debt; that the decree was drawn by the attorney of Bryant, who believed that lots No. "4 and 5" represented the land that Rudwig purchased of Fergerson and Dawson, but he was mistaken, as the lots on which J. W. Crum had no lien were represented by No. "3 and 4," and by the mistake of said attorney these lots were named last in the order of sale, instead

of first; that the mistake occurred by pursuing the order in which the several lots are mentioned in the deed of Bryant to Fergerson and Dawson; that it was the intent and purpose of all the parties interested, Rudwig included, to sell first the parcels of ground not embraced in the deed of Fergerson and Dawson to him; that the marshal of the Louisville chancery court sold the several parcels of land in the order in which they are named in the decree; that by Bryant being present, and understanding as he did that lots Nos. 1, 2, 3 and 6 represented the land upon which he held the exclusive lien, he bid them in at $5 and $4 per acre, and Rudwig having the same belief and understanding that lots No. 4 and 5 represented the land he had purchased of Fergerson and Dawson, bid them in at $15 and $17.50 per acre; that Rudwig, at the time of the sale, declared that it was his purpose to buy in the same land he had previously bought of Fergerson and Dawson; that the land so purchased was improved by a dwelling house, orchard and vinyard, which made it valuable.

But by the misunderstanding of all the parties, the improved land, in fact, represented by Nos. 1, 2 and 6, Rudwig permitted to be sold for from $4 to $5 and bid for Nos. 4 and 5 at $17.50 per acre, when No. 4 was unimproved, hilly and very inferior land. Bryant transferred his bid to Rudwig, whereby he became the purchaser of all the land. After the expiration of more than two weeks, Rudwig, finding that he was unable to give the requisite bonds for the purchase money, proposed to appellee to transfer his bids on the land he had purchased from Fergerson and Dawson, which land he represented at the time to be designated by lots Nos. 4 and 5. He, relying on the representation of Rudwig, and believing that said numbers embraced the improved lands with the houses, orchards and vinyard, from an examination he and George W. Crum made of them with Rudwig, during which he, Rudwig, showed them lot No. 1, on which said improvements are located, and represented to them that it was lot No. 4, also showing them the boundary of lot No. 4, he induced the appellee to take his bids, which he consented to do, laboring under a mistake as to the lots represented by said numbers, produced by the false and fraudulent statement of appellant, made to him in relation thereto, and executed his three bonds with George W. Crum as his security for $—— each, for the price of said lots bid by Rudwig. He has now paid off and taken up the one which first matured; but he had not discovered the mistake till within one week from the time he exhibited his petition.

He prayed that the mistake be corrected for a conveyance to him of lots Nos. 1, 2, 5 and 6, and if that could not be done then he prayed the sale be set aside and the lots ordered to be resold, and for all proper relief.

In an argumentative answer, containing about twenty pages (manuscript), Rudwig denies that Bryant had an exclusive lien on lots Nos. 3 and 4, and denies that George W. Crum had any lien on lots Nos. 1, 2, 5 and 6 to secure the payment of the two notes executed by said Rudwig to Fergerson and Dawson, and by them assigned to said Crum, or that he ever had such lien, or that the court below ordered lots on which Bryant had an exclusive lien to be first sold to pay his debt.

He denies that when Bryant's attorney drew the decree for the sale, that he understood or believed that lots Nos. 4 and 5 represented the property Rudwig purchased of Fergerson and Dawson, and there, by mistake, inserted lot No. 4 last in the order for the sale, or that the court had any intention of ordering a sale of the property in a manner different from that expressed in the judgment. He denies that it was the expressed intention of the parties interested to first sell the lots on which Bryant had an exclusive lien, and that a mistake was committed in writing out the judgment by describing the lots in the decree as they are numbered in the deed of Bryant to Fergerson and Dawson. And he then avers that Bryant held a lien on all the lots; and the court adjudged that all should be sold to pay his debt, if necessary, and orders them sold as set forth in the judgment, without regard to any intention of the parties; that the marshal was ordered to sell said lots beginning with 1, then 2, then 3, then 6, then 4, and 5, successively, and to sell all unless enough was realized to pay said lien before all were sold; that the manifest intention of the court was to sell the most valuable lots first, that enough might be realized to satisfy Bryant's lien without regard to the numbers, and to avoid the sale of the whole of the land; that the marshal sold the lots in the order in which they are named in Bryant's deed.

He admits that Bryant was the purchaser at the marshal's sale of lots Nos. 1, 2, 3, for $4 and $5 per acre, and that he purchased lots Nos. 4 and 5 at $5 and $17.50 (as is in the transcript before us), which last named lots he had no interest in; but he denies that Bryant, when he purchased, understood or believed that the lots bid in by him were those on which he had an exclusive lien, and denies that he then understood that lots 4 and 5 were the same he had pur-

chased from Fergerson and Dawson. He admits that it was his express intention to buy in the land he had previously bought of Fergerson and Dawson, on which were situated the dwelling house, orchard and vinyard, and for that reason he agreed to assume for Bryant; and that Bryant transferred his bids for lots 1, 2 and 6 to him, and he thereby did become the purchaser of said lots. He avers that the lot No. 4 was and is worth the full price he bid for it, and denies that it was unimproved, hilly and inferior land. He also denies that he proposed to appellee to transfer his bids on the lots he purchased from Fergerson and Dawson, and represented to him at the time that lots 4 and 5 represented the land purchased by him from the last named individuals, and that he was induced to take them because he relied on the truth of those statements. He charges that Jacob Crum was in fact the owner of the notes executed to Fergerson and Dawson by appellant although they were assigned to George W. Crum, and that he was induced to assume his bids, and become the purchaser of lots Nos. 4 and 5 as a means of saving his debts, because no lien, as he knew, existed on said lots, for the payment of the notes. He also knew that Fergerson and Dawson were insolvent; and he files, as part of his answer, the written agreement made between himself and Joe and Jacob Crum, marked "B," as evidencing the truth of his statement.

He says in his answer that he had no more knowledge of the situation of the several lots of land as numbered in case No. 24,937, and set out in the survey filed in this case, than appellee; that a survey in this case was necessary, and it was made to ascertain which numbers belong to each plat, and he is yet in doubt which survey is correct, the plat theretofore filed, or exhibit "A" filed with his answer; that when he transferred his bids to appellee all the land had been sold, and he was the purchaser of the lots No. 4 and 5 only, and could not transfer more than he had purchased. The sale of the land by the marshal was made on the 27th of May, 1872, and on the 25th of June, 1872, he made the agreement with the Crums, evidenced by "Exhibit B," by which Jacob assumes his bids for lots Nos. 3 and 4, with the right reserved to himself to redeem them if he refunded the money to said Crum by the time the last instalment was due; that at the time of answering only the first instalment was due and paid, and his right to redeem still existed; that subsequent to this agreement with Crum, he contracted with Bryant to take lots 1, 2, 3 and 6; that on the 28th of June, 1872, the marshal, by agreement of all the parties interested, made his

report of the sale to the court, reporting Jacob Crum as the purchaser of lots 4 and 5, and appellant as purchaser for lots 1, 2, 3 and 6; and that said report of sale was confirmed more than sixty days before this suit was instituted.

He admits that he was on the land with Jacob and George Crum before the sale of the marshal, and before he had any interest in the land except as stated in case 24,937, but whether the lot he was on was 1 or 4 he had not sufficient knowledge or information to form a belief, except from a survey which has since been made in this suit. He had no survey showing the number as set forth in decree in case 24,937, nor any better means of knowing the numbers than appellee, and therefore denies that he fraudulently misrepresented the numbers of lots even before he had any interest as purchaser at the judicial sale. But he avers that lots 4 and 5 are worth more than the sum bid for them, and the amount of the two notes he executed to Fergerson and Dawson, and if he fails to redeem them, said two lots can be sold for more than he bid for them, and the Crums will be fully indemnified.

This elaborate extract is made from the answer in order that the manner and the extent of the denial of the direct averment in the petition on which the claim for relief is based, may be fully and clearly comprehended.

Appellant does not deny that he told the appellee that lots Nos. 4 and 5 represented the land he bought of Fergerson and Dawson, nor that he told him the improvements were on those lots; nor does he deny that the appellee made the purchase on the faith of the truth of the statements made to him by appellant. He only denies that he fraudulently misrepresented to him the numbers of these lots, presenting in the preceding part of the sentence the reasons for the conclusions. But giving to every word and the whole context the most liberal construction, the material allegations are not traversed by the answer. The denial is not that he did not make the statements, but that he did not make them fraudulently; and that may and is most probably true, for the record will impress upon the reader the conviction that all the parties below under a mistake as to the numbers of lots on which the improvements were located.

But if the allegations of the petition were sufficiently controverted by the answer, the fact of the mistake is established by a weight of evidence that is overwhelming. The great difference in the value of the land, and the fact that the less valuable lots sold for more than three times as much as the most valuable lots, is a very power-

ful fact in support of the appellee's claim to relief, and the marshal who made the sale, Bryant, and W. H. Crum, who were interested in the sale and present when the mistake was made.

But it is insisted that the judgment in the first case is final; and the chancellor cannot revise and reverse the vice-chancellor's decree. We understand the proceeding by Jacob Crum as a supplemental petition to the first suit, in the nature of a bill of review, instituted in the same court in which the decree was rendered, to correct that decree for the mistake of fact. That the chancellor may on a proper issue made for the purpose and the facts established, correct a decree of a former term wrongfully entered through mistake or fraud, is too well established by authority to be questioned. *Garner's Admr., v. Strode,* 5 Littell 315; *Brewer v. Bowman,* 3 J. J. Marsh. 492.

Nor is it material by what name the proceeding is called; if the facts set forth in the pleading are such as to show that there was a clear mistake in entering the judgment, and the complaining party is adjudged to take a tract of land he did not contract to buy, and to lose the one he did buy, and the mistake was natural and discovered after the term at which it was entered, it is clearly and satisfactorily established that the court which rendered the judgment has the power to correct. *Basye v. Beard's Exr., et al.,* 12 B. Mon. 581.

But it seems to us that the action of the chancellor may be sustained on another ground. Jacob Crum purchased, not at the sale, but afterwards; and although the sale was confirmed by the court, conveyances were not made; and the evidences establish the fact that G. Crum should pay for the land which the chancellor by his last deed ordered to be conveyed to him, and in the number and the conveyance was in fact carrying out the sale as it was made and confirmed. Wherefore the orders complained of in record No. 1 are not prejudicial to appellant, and are affirmed; and the judgment in No. 2 is *affirmed.*

*J. S. Butler, for appellant.*
*Muir Biper, Davie, for appellee.*